UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES GEORGE, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:16-cv-00360 |
| | § | |
| SI GROUP, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

All pretrial matters in this seven-year-old lawsuit were referred to me on December 16, 2024. *See* Dkt. 264. There are 14 motions pending before me. *See* Dkts. 195, 216, 221–23, 225, 227, 229–34, 236.

This memorandum and recommendation addresses (1) a motion for summary judgment (Dkt. 221) filed by Defendant Bulk Solutions, LLC ("Bulk Solutions"); (2) a joint motion for summary judgment (Dkt. 234) filed by Defendants Brenner Tank Services, LLC ("Brenner Tank") and Bulk Solutions (collectively, "Defendants"); and (3) six motions to exclude expert testimony. *See* Dkts. 222, 225, 227, 229, 231, 236.

## BACKGROUND

Both this court and the United States Court of Appeals for the Fifth Circuit are familiar with the facts of this case. *See George v. SI Grp., Inc.*, 36 F.4th 611, 613–18 (5th Cir. 2022).

> [Plaintiff] James George suffered severe burns when one "leg" of the landing gear on a tanker-trailer, detached from its tractor and sank into a gravel surface, causing the tanker-trailer, filled with scalding water, to tip over and to spill its contents on him. George brought a premises-defect claim against the owner of the property. He also asserted products-liability claims against the owner of the tanker-trailer and three companies involved in designing, distributing, or manufacturing the tanker-trailer.

*Id.* at 613. Defendant SI Group, Inc. is the owner of the property. The owner of the tanker-trailer is Evergreen Tank Solutions, Inc. ("Evergreen"). The three companies involved in designing, distributing, or manufacturing the tanker-trailer are Bulk Tank International, Brenner Tank, and Bulk Solutions.

United States District Judge Lynn N. Hughes previously dismissed George's products liability claims (marketing, design, and manufacturing defect) on the pleadings. *See George v. SI Grp., Inc.*, No. G-16-360, 2018 WL 6435740, at *1 (S.D. Tex. Dec. 7, 2018). George appealed. On June 3, 2022, the Fifth Circuit affirmed the district court's dismissal of Evergreen as a nonmanufacturing seller but reversed and remanded in all other respects. *See George*, 36 F.4th at 623–24. On June 22, 2022, before the Fifth Circuit's mandate issued, Judge Hughes issued a new opinion, finding that (1) George adequately pleaded his marketing defect and design defect claims, but (2) George's manufacturing defect claim against Brenner Tank and Bulk Solutions should be dismissed. *See* Dkt. 176.

Brenner Tank and Bulk Solutions jointly move for summary judgment on George's product liability claims based on what they allege is George's inability to establish a prima facie case for either a marketing defect or a design defect. *See* Dkt. 234. Bulk Solutions independently moves for summary judgment on George's product liability claims based on its status as a nonmanufacturing seller. *See* Dkt. 221. Related to these dispositive motions are three motions to exclude expert testimony. *See* Dkts. 222, 225, 227.

## LEGAL STANDARD

"Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019); *see also* FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.

1989). In determining whether a fact issue exists, I "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Com. & Indus. Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002). "In determining whether there is a genuine dispute as to any material fact, [I] must consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quotation omitted). In short, "[s]ummary judgment should be granted where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *In re Deepwater Horizon*, 48 F.4th 378, 382 (5th Cir. 2022) (quotation omitted).

## ANALYSIS

### A.   BULK SOLUTIONS IS ENTITLED TO SUMMARY JUDGMENT AS A NONMANUFACTURING SELLER

Bulk Solutions seeks summary judgment based on its status as a nonmanufacturing seller. *See* Dkt. 221. "Chapter 82 of the Texas Civil Practice & Remedies Code generally immunizes a nonmanufacturing seller from products-liability claims unless the claimant proves that a statutory exemption applies." *George*, 36 F.4th at 620 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)).

Chapter 82 defines a "seller" as one "who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM. CODE § 82.001(3). Chapter 82 defines a "manufacturer" as one "who is a designer, formulator, constructor, rebuilder, fabricator, producer,

compounder, processor, or assembler of any product or any component part thereof and who placed the product or any component part thereof in the stream of commerce." *Id.* § 82.001(4).

It is undisputed that Bulk Solutions is a nonmanufacturing seller. Bulk Solutions acted as the distributor and licensed dealer of the subject trailer, but did not participate in any design of the subject trailer. Bulk Solutions is thus immune from George's products liability claims unless a statutory exemption applies. Those statutory exemptions are set forth in § 82.003(a).

George seeks to invoke the seventh exception listed in § 82.003(a)(7)(B), which allows for liability against a nonmanufacturing seller when the plaintiff can show "that the manufacturer of the product is . . . not subject to the jurisdiction of the court." *Id.* at § 82.003(a)(7)(B). George contends that Bulk Tank International, a Mexican company, manufactured the subject trailer. Because Bulk Tank International has been served with this lawsuit, but has not answered or appeared, George argues that Bulk Tank International is not subject to the jurisdiction of this court and Bulk Solutions can be held liable as a nonmanufacturing seller.

There is one glaring problem with this argument. It "fails to acknowledge that Bulk Tank International was not the only 'manufacturer' of the tanker-trailer named in the complaint as defined by subchapter 82.001." *George*, 36 F.4th at 621. The summary judgment evidence conclusively establishes that Brenner Tank is also a manufacturer under § 82.001(4), because it participated in the design of the tank trailer. *See* Dkt. 221-7 at 4 ("Brenner Tank participates in the design and the manufacturing of units at the Bulk Tank [International] facility in Mexico."). Given that Bulk Tank International and Brenner Tank are both "manufacturer[s]" as defined by § 82.001(4), and Brenner Tank has appeared in this case, "the seventh exception listed in subchapter 82.003[a](7)(B) is inapplicable and [Bulk Solutions] is immune from George's products-liability claims pursuant to Chapter 82 of the Texas Civil Practice & Remedies Code." *George*, 36 F.4th at 621. Accordingly, I

4

recommend that Bulk Solutions' motion for summary judgment (Dkt. 221) be granted.

B. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON GEORGE'S PRODUCT LIABILITY CLAIMS**[1]

Defendants have jointly moved for summary judgment on George's marketing defect/failure-to-warn claim and his design defect claim against them. *See* Dkt. 234. I will address each in turn.

1. *Marketing Defect/Failure-to-Warn Claim*

"[A] marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ). "The adequacy of a warning is a question of fact to be determined by the jury." *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 592 (Tex. 1986). But "the determination that a duty to warn exists in a given situation is a question of law for the court." *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citing *Alm*, 717 S.W.2d at 595). Thus, at the summary judgment stage, the court must determine "whether a reasonably prudent person in the position of the defendants would warn of all hazards associated with the products." *Munoz*, 732 S.W.2d at 65. If there is "no further duty to warn, there can be no material fact issue regarding the adequacy of the warning given." *Id.* at 65.

"[T]here is no duty to warn of obvious or commonly-known dangers." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995) (collecting cases). Similarly, the Supreme Court of Texas "has recognized that there is no duty to warn when the risks associated with a particular product are matters 'within the ordinary knowledge common to the community.'" *Id.* (quoting *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991)). "In any situation in

---

[1] Although my analysis applies with equal force to both movants, Bulk Solutions' status as a nonmanufacturing seller is an independent and sufficient reason for awarding summary judgment to Bulk Solutions.

which there is a duty to warn, the warning is required in order to impart special knowledge. If that special knowledge already exists, further information is not necessary." *Munoz*, 732 S.W.2d at 66.

Here, it is undisputed that "[t]he trailer's Gross Vehicle Weight Rating (GVWR) was 65,000 lbs." Dkt. 114 at 6. Because the trailer has "a gross vehicle weight rating . . . of more than 4,536 kilograms (10,000 pounds)," it is considered a commercial motor vehicle ("CMV"). 49 C.F.R. § 383.5; *see also* TEX. TRANSP. CODE ANN. § 522.003(5) ("'Commercial motor vehicle' has the meaning assigned by 49 C.F.R. Section 383.5."). Under Texas law, a commercial driver's license ("CDL") is required to drive a CMV. *See* TEX. TRANSP. CODE ANN. § 522.011(a) (stating that "[a] person may not drive a commercial motor vehicle unless," among other things, they either have a CDL or a commercial learner's permit). "'Drive' means to operate or be in physical control of a motor vehicle." *Id.* § 522.003(11).

It is undisputed that Veolia crewmember Joe Armstrong is the one "who unhitched the trailer." Dkt. 248 at 12. Armstrong received his CDL on December 29, 2015, approximately eight months prior to the incident that caused George's injuries. *See* Dkt. 234-9 at 4. In studying for the CDL, Armstrong "read every single chapter and every single section" of the Texas Commercial Motor Vehicle Driver's Handbook ("CDL-Handbook"). *Id.* at 10; *see also id.* at 6 (introducing the CDL-Handbook as Exhibit 2 at Armstrong's deposition). The CDL-Handbook instructs users to "[m]ake sure surface of parking area can support weight of trailer" before uncoupling. Dkt. 234-23 at 90. Additionally, "Brian Wigal, Veolia's corporate designee, Renee Barrett Marze, a former safety manager for Veolia, and Jose Cardona, a former more experienced Veolia driver, testified that Veolia's practice was to use matting[2] if trailers were dropped on anything other than concrete, and that matting was available to the Veolia crew." Dkt. 234 at 9; *see also* Dkt. 234-10 at 6 (agreeing, on behalf of Veolia, "that the practice at Veolia was not to drop a

---

[2] "Matting" is a "type of support" sometimes referred to "padding" or "boards." Dkt. 234-10 at 6–7.

trailer unless it was on a concrete or asphalt [surface] without some other form of support"); Dkt. 234-25 at 7 (Veolia's former safety manager testifying that Veolia drivers are taught to "uncouple on a solid level surface" and that if you can't uncouple on concrete, "You need to lay down mats."); Dkt. 234-26 at 6 (Veolia driver testifying that it was "standard" to use mats "every time" the trailer was unhooked and that "[t]here was always mats on the trailer").

In response to this overwhelming evidence that Armstrong possessed specialized knowledge about the risks of unhooking the trailer on an unlevel surface (i.e., not concrete), George responds with testimony from his expert, Roelof deVries, that "Defendants cannot assume that the operator has full knowledge," and that "Defendants must recognize that not every driver, not every operator takes the time to read every manual." Dkt. 248 at 16 (cleaned up). Defendants have moved to strike Mr. deVries' testimony. *See* Dkt. 227. I need not decide that motion because, even if I accept Mr. deVries' testimony, it changes nothing.

As Defendants note, George "cites no case law for the proposition that a warning has to be provided because **a** CDL driver may not know of the risk and may not read the Operator's Manual." Dkt. 259 at 4. Rather, the Texas Supreme Court has held that "[w]hen the foreseeable users of a product have special training, a supplier has no duty to warn of risks that should be obvious to them, even if persons without such training would not appreciate the risks." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 183 (Tex. 2004). There is no genuine dispute of material fact that Armstrong—the user/driver who uncoupled the trailer—knew or should have known the risk of uncoupling the trailer on an unlevel surface without using matting.[3] Accordingly, I find that "further information [was] not necessary." *Munoz*, 732 S.W.2d at 66; *see also Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 71 (Tex. App.—Texarkana 2002, pet. denied) (holding

---

[3] George's "evidence" that Armstrong never read the trailer's operator's manual and did not look at the decals on the front of the trailer does nothing to change the undisputed fact that Armstrong knew or should have known of the risk of placing the trailer on an unlevel surface without matting.

that defendant proved it had no "duty to warn [plaintiff] about the driving characteristics of liquid-filled tanker trucks when they are not fully loaded" because "drivers of tanker trucks are aware of such characteristics and those characteristics are part of the standard operation of this type of vehicle").[4] Defendants are entitled to summary judgment on George's marketing defect claim.[5]

### 2. *Design Defect Claim*

To prevail on a design defect claim under Texas law, "'a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery.'" *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)). Brenner Tank and Bulk Solutions contend that George cannot establish any of these elements. I need address only the third element because, even if the trailer's design was defective, it was not the producing cause of George's injuries.

To be a "producing cause" of a plaintiff's injuries, "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). Although producing cause is generally a fact question for the jury, it becomes a question of law if a reasonable jury could reach only one conclusion. *See Goodner*, 650 F.3d at 1044 ("[I]f all the facts and

---

[4] "Whether there exists a duty to warn or instruct is a question of law for the court to determine." *Allen*, 79 S.W.3d at 69 n.4. *Allen* addressed whether an employer had a duty to warn its employee, not whether a product designer, manufacturer, or distributor had a duty to warn an end-user of its product. Even so, *Allen*'s logic that there is "no duty [to warn] . . . where the dangers incident to the work are . . . fully understood by the employee" applies with equal force to the foreseeable end-user of a product. *Id*. at 70.

[5] Defendants motion to exclude the testimony of George's warnings expert, Dr. John McGrath (Dkt. 225), should be denied as moot. Even if admitted, Dr. McGrath's testimony would have no effect on my analysis that Defendants legally owed no duty to warn.

inferences point so strongly against causation that no reasonable jury could find causation, then the district court should grant summary judgment as a matter of law."). Such is the case here where the evidence conclusively establishes—meaning there is no genuine dispute of material fact—that Armstrong knew or should have known to use matting when uncoupling the tanker on an unlevel surface.

George's engineering experts both conceded in deposition testimony that no design changes would be necessary if a proper warning were affixed to the trailer.[6] Specifically, Mr. deVries testified that the trailer would be safe as designed if it "had a decal on it that said don't put the landing gear down on any unstable surface." Dkt. 234-17 at 7. Similarly, expert Eric Van Iderstine testified that if "pads would have been used, . . . that would have prevented the accident." Dkt. 234-20 at 6. Yet, as discussed above, Armstrong knew or should have known to use matting when uncoupling the trailer on an unlevel surface. Accordingly, it is undisputed that the "but-for" or "producing cause" of George's injuries was Armstrong's failure to use matting when uncoupling the trailer on an unlevel surface, and not the design of the trailer itself. Defendants are entitled to summary judgment on George's design defect claim for the same reason they are entitled to summary judgment on George's marketing defect claim: Had Armstrong acted as a reasonable, licensed CDL driver trained in Veolia's policies, the accident would not have occurred, and no design change would be necessary.

## CONCLUSION

For the reasons discussed above, I recommend the court grant (1) Bulk Solutions' Motion for Summary Judgment (Dkt. 221), and (2) Defendants' Joint

---

[6] Brenner Tank and Bulk Solutions have moved to exclude the testimony of both Mr. Van Iderstine and Mr. deVries. *See* Dkts. 222, 227. I need not decide either motion. If the experts' testimony is excluded, George cannot prove a design defect. If the experts' testimony is admitted, it is fatal to George's design defect claim because the experts' admissions that the trailer would be safe if used in accordance with Armstrong's training proves that the trailer's design was not the producing cause of George's injuries.

Motion for Summary Judgment (Dkt. 234). Summary judgment should be entered in favor of Bulk Solutions and Brenner Tank.

I also recommend the court deny as moot the three motions to exclude expert testimony that relate to Defendants' motions for summary judgment. *See* Dkts. 222, 225, 227.

Finally, I recommend that the court also deny as moot (1) Defendants' remaining motion to exclude expert testimony (Dkt. 229); (2) SI Group's Motion to Exclude Opinions Regarding Control Over Independent Contractors Offered by Defendants Bulk [Solutions] and Brenner [Tank]'s Expert Eric Boelhouwer (Dkt. 231); and (3) George's motion to exclude the supplemental reports of Defendants' experts (Dkt. 236). Though not directly related to Defendants' summary judgment motions, these motions are all moot if Defendants are awarded summary judgment and are no longer in this litigation.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 21st day of February 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE