United States District Court
Southern District of Texas
**ENTERED**
March 03, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES GEORGE, | § | |
| Plaintiff. | § § § | |
| V. | § § | CIVIL ACTION NO. 3:16-cv-00360 |
| SI GROUP, INC., *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

All pretrial matters in this seven-year-old lawsuit were referred to me on December 16, 2024. *See* Dkt. 264. Pending before me is a motion for reconsideration (Dkt. 195), two motions for summary judgment (Dkt. 216, 233), and three motions to exclude expert testimony (Dkts. 223, 230, 232) filed by Defendant SI Group, Inc. ("SI Group").

## BACKGROUND

Both this court and the United States Court of Appeals for the Fifth Circuit are familiar with the facts of this case. *See George v. SI Grp., Inc.*, 36 F.4th 611, 613–18 (5th Cir. 2022).

> [Plaintiff] James George suffered severe burns when one "leg" of the landing gear on a tanker-trailer, detached from its tractor and sank into a gravel surface, causing the tanker-trailer, filled with scalding water, to tip over and to spill its contents on him. George brought a premises-defect claim against the owner of the property.

*Id.* at 614. The owner of the property is SI Group.

United States District Judge Lynn N. Hughes previously dismissed George's premises liability claims on summary judgment. *See George v. SI Grp., Inc.*, No. G-16-0360, 2020 WL 2736699, at *1 (S.D. Tex. May 25, 2020). George appealed. On June 3, 2022, the Fifth Circuit reversed summary judgment, holding that the heightened standards of Chapter 95 of the Civil Practice and Remedies Code did not apply to George's premises claim. *See George*, 36 F.4th at 623. The Fifth Circuit

remanded the matter to the trial court to consider whether summary judgment was appropriate under the common law. *See id.* On June 22, 2022, before the Fifth Circuit's mandate issued, Judge Hughes issued a new opinion, finding that SI Group's motion for summary judgment on George's premises liability claim should be denied under Texas common law. *See* Dkt. 176.

SI Group asks this court to reconsider Judge Hughes's June 22, 2022 Opinion and Order. *See* Dkt. 195. SI Group also seeks summary judgment on George's premises liability claim. *See* Dkt. 216. Should the court deny SI Group's latest motion for summary judgment, SI Group moves for summary judgment on gross negligence. *See* Dkt. 233. Accompanying these dispositive motions are motions to exclude various expert testimony. *See* Dkts. 223, 230, 232.

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of fact for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). For a defendant, this burden is satisfied by showing that "the plaintiff has a failure of proof on an essential element of its claim or because the defendant has insurmountable proof on its affirmative defense to that claim." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A defendant does this by introducing evidence or by "pointing out . . . an absence of evidence to support the [plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the defendant succeeds on that showing, the burden shifts to the plaintiff to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the plaintiff permits a jury verdict in the plaintiff's favor."

*Bartlett*, 981 F.3d at 329. The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The party opposing a summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). On summary judgment, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). I "must consider all of the evidence in the record, but [I] do not make credibility determinations or weigh the evidence." *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

## ANALYSIS

**A.   SI GROUP'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED**

After the Fifth Circuit published its June 3, 2022 decision, but before mandate issued, Judge Hughes issued an opinion, holding that

> George has presented admissible evidence that created a genuine issue of fact about whether SI Group knew that the water leak increased the risk that the tanker-trailer would tip on unstable ground near the fire monitor. SI Group exercised some control over George's work, because (1) it hired Veolia, (2) provided the tanker-trailers and vacuum truck, (3) told the Veolia crew where to park the tanker-trailer, and (4) checked on the crew several times throughout the day.

Dkt. 176 at 5. These two sentences are the sum and substance of Judge Hughes's analysis regarding SI Group's previous motion for summary judgment. *See* Dkt. 137. SI Group seeks reconsideration of that decision. *See* Dkt. 195.

George argues that "SI Group has not offered proper grounds for reconsideration." Dkt. 198 at 9. I disagree. The Fifth Circuit has held—in a procedurally analogous case where a district court reconsidered its denial of a motion for summary judgment—that "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence

3

or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works*, Inc., 910 F.2d 167, 185 (5th Cir. 1990). Accordingly, nothing prevents this court from reconsidering Judge Hughes's June 22, 2022 Opinion and Order. Moreover, "there is an obligation—once a motion to reconsider is filed—at least to satisfy oneself that the prior ruling is correct and that valuable judicial and party resources will not be wasted on an unnecessary trial." *Am. Stone Diamond, Inc. v. Lloyds of London*, 934 F. Supp. 839, 841 (S.D. Tex. 1996). Accordingly, I recommend that SI Group's Motion for Reconsideration (Dkt. 195) be granted. The court should consider the parties' evidentiary arguments anew when evaluating SI Group's motions for summary judgment.

### B.   THE LAW REGARDING PREMISES DEFECTS

The Fifth Circuit remanded this case "with the instruction to analyze [George's] premises-defect claim [against SI Group] under the common-law standard." *George*, 36 F.4th at 622.

"There are two types of premises defects for which an independent contractor's employee may seek to hold the general contractor liable." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). A general contractor has a duty to warn an independent contractor about preexisting defects or defects "that are created through some means unrelated to the activity of the injured employee or his employer . . . of which the general contractor knows or should know." *Id.* A general contractor also has a duty to warn an independent contractor's employee of a premises defect created by the independent contractor's work activity, *but only if* the general contractor exercises supervisory control that is "relate[d] to the condition or activity that caused the injury." *Id.* at 528; *see also Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). The former is known as the premises condition theory, whereas the latter is known as the negligent activity theory. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214–15 (Tex. 2008).

In other words, George has two avenues to establish SI Group's liability: he must demonstrate either (1) that SI Group knew or should have known of a

preexisting premises defect that made the gravel surface unstable (premises-condition theory), or (2) that SI Group controlled Veolia's activities such that any defect caused by Veolia's staging of the tanker is ultimately SI Group's responsibility (negligent-activity theory). George pursues both theories in his summary judgment response.[1] I will address each in turn.

C. **GEORGE'S PREMISES DEFECT THEORY FAILS FOR LACK OF EVIDENCE AS TO SI GROUP'S KNOWLEDGE OF A DANGEROUS CONDITION**

To prevail on a premises defect theory, George must produce evidence that SI Group had knowledge of a dangerous condition. "In premises cases, constructive knowledge can be established by showing that the hazardous condition existed long enough for the owner to have discovered it through a reasonable inspection." *E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 60 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd). A lack of "actual or constructive knowledge of a dangerous condition in the [area where the injury occurred] precludes any premises liability claim" regardless of the basis of the claim. *Motel 6 G.P. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). A premises owner "has no duty to reduce or eliminate risks of which it is not and should not be aware." *Id*.

George contends the evidence shows "that water from rain and an underground leak made the gravel staging area unstable." Dkt. 220 at 14. I will assume for the sake of argument that there was an underground leak prior to the accident that created a dangerous condition that was the proximate cause of the accident that caused George's injuries. Even so, George must establish SI Group's knowledge of that dangerous condition to prevail. This he cannot do.

1. ***SI Group's Post-Accident Investigative Report Is Not Evidence of Knowledge***

First, George points to a "Root Cause Analysis Report" that SI Group published as a result of an investigation into the accident. *See* Dkt. 138-8. SI Group

---

[1] Although George "may pursue damages through alternative theories of recovery, [he] is not entitled to a double recovery." *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 805 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (cleaned up).

began its investigation the day *after* the accident and completed the Root Cause Analysis Report three days later on August 19, 2016. *See id.* at 2. In a section titled "Other Points Brought Out *During Investigation*," SI Group's investigators noted: "The ground the trailer landing gear sunk into was next to a fire monitor - fire monitors allow some water to leak into the ground during operation. This may have induced additional weakness into the un-stabilized ground." *Id.* at 3 (emphasis added). Although this document, created *after* the incident, may be evidence of a dangerous condition (i.e., an underground leak), it is not evidence that SI Group knew about an underground leak *prior* to the accident.

### 2. *Veolia's Post-Accident Report Is Not Evidence of SI Group's Knowledge*

Second, George points to an Operations Incident Notification created by his own employer, Veolia, who is not a party to this litigation. *See* Dkt. 139-5. Veolia's two-page report states:

> Investigation found that there was a water line leaking under the ground of where the tanker's [l]anding gear had been placed which contributed to the landing gear sinking into the ground. Tanker should not have been staged on that ground, but a hazard analysis had been conducted [b]y both driver and crew leader and the decision was made to stage the trailer at that location.

*Id.* at 3. Veolia's report was created by Stephanie Renee Marze (née Barrett). Marze testified that she "received that information [that there was a water line leaking under the ground] from the crew," but that she "[could]n't remember specifically who." Dkt. 223-9 at 22. Setting aside the lack of foundation for the statement contained within Veolia's Operations Incident Notification about a water line leaking, the Operations Incident Notification—created *after* the accident and based on statements by *Veolia's* employees, not SI Group's employees—is not evidence that *SI Group* knew about an underground leak *before* the accident.

### 3. *Post-Accident Statements by SI Group Employees About a Leak Are Not Evidence of Knowledge*

George next points to the testimony of Michael Muñoz, Veolia's crew leader for the day. Muñoz testified that he "overheard these two SI Group guys talking

6

about the leak" and that "it [was] clear to [Muñoz] they were talking about [how] there was a leak prior to this incident" in which the tanker-trailer tipped and spilled scalding water on George. Dkt. 220-2 at 37. Specifically, Muñoz testified that, after the accident, he heard an SI Group operator "say that [the] fire monitor was out of service" and "that there was an underground leak." *Id.* at 29. Yet, Muñoz also testified that no one said "when" the fire monitor "was leaking." *Id.* Even so, Muñoz testified that he "would take" the unidentified operator's comments to mean that the leak was "before the incident happened." *Id.*

The parties spill much ink debating the applicability of the party-opponent exception to the rule against hearsay, which provides that a statement "offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. FED. R. EVID. 801(d)(2)(D). I need not resolve this issue. I will assume, for the sake of argument, that the people Muñoz overheard fall within the party-opponent exception and that their statements can be admitted against SI Group. Even so, a statement by unidentified SI Group employees "that the fire monitor was out of service" and "that there was an underground leak" are still not proof that SI Group knew about a dangerous condition *before* the accident. Dkt. 220-2 at 29.

When asked if these unidentified SI Group operators mentioned "*when* [the fire monitor] was leaking," Muñoz testified "No." *Id.* (emphasis added). Thus, even if the court admits the specific statements that Muñoz testified he overheard—"that the fire monitor was out of service" and "that there was an underground leak" (*id.*)—"Muñoz's understanding of the operators' meaning is nothing more than baseless speculation." *George, Inc.*, 36 F.4th at 626 (Haynes, J., dissenting-in-part) (cleaned up). In other words, Muñoz can testify that SI Group employees said the fire monitor was out of service and that there was underground leak, but without something more (and Muñoz's speculation cannot be the "something more"), those statements are still not evidence that SI Group knew of a dangerous condition *before* the accident.

**4.    *George's Expert Cannot Testify as to SI Group's Knowledge***

George next maintains that his worksite safety expert, Ben Gibson, is qualified to opine on SI Group's knowledge. But Gibson "has no expertise or specific knowledge that sheds light on this issue." *Manning v. Walgreen Co.*, 638 F. Supp. 3d 730, 735 (S.D. Tex. 2022) (holding that "the one subject [the plaintiff's expert] may not testify about at trial is whether [the defendant] actually knew the allegedly dangerous condition existed"); *see also Payne v. Wal-Mart Stores Tex., LLC*, No. MO:18-cv-00224, 2020 WL 4718056, at *4 (W.D. Tex. June 23, 2020) (holding that an expert witness "cannot testify about what Defendant actually knew"). Rather, Gibson merely evaluates the evidence discussed above and draws his own conclusions without relying on any specialized education and expertise. The jury can do that on its own. Accordingly, Gibson's testimony as to SI Group's knowledge should be excluded.[2]

**5.    *George's Remaining Evidence Is Also Not Evidence of SI Group's Actual or Constructive Knowledge***

Perhaps recognizing that he has no evidence that SI Group actually knew of a dangerous condition before the accident, George argues that SI Group had constructive knowledge because it "'had a reasonable opportunity to discover and to remedy an allegedly dangerous condition.'" Dkt. 198 at 16 (quoting *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). Again, I will assume for the sake of argument that a dangerous condition actually existed and that it was that condition (as opposed to the Veolia crew's decision to unhook the trailer without additional support) that proximately caused George's injuries. Even so, George must produce evidence "that the hazardous condition existed long enough for the owner to have discovered it through a reasonable inspection." *Roye*, 447 S.W.3d at 60.

---

[2] SI Group has moved to exclude Gibson's opinions. *See* Dkt. 223. I recommend that the motion be granted with respect to Gibson's opinions about SI Group's knowledge. In all other respects, the motion should be denied as moot because the remainder of Gibson's opinions have no effect on my summary judgment analysis.

In *Roye*, the Texas Court of Appeals reversed a jury verdict in plaintiff's favor despite finding that the record contained "abundant evidence a concealed hazard existed the day of the [accident that caused the plaintiff's injuries]." *Id.* The court reversed because there was "no evidence in the record demonstrating *when* [the dangerous condition was created]." *Id.* (emphasis added). Here, as in *Roye*, George "does not contend, and there is no evidence in the record indicating, that [SI Group] failed to conduct any inspections of its premises." *Id.* To the contrary, George concedes that SI Group "conducted an inspection of the staging area." Dkt. 138 at 23. "In addition, there is no evidence in the record establishing what type of reasonable inspection a landowner in [SI Group]'s position should undertake, or that such a reasonable inspection would have revealed [an underground leak]." *Roye*, 447 S.W.3d at 60. Nor is there evidence that SI Group received any reports that would have alerted it to a dangerous condition. *See Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) ("Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition.").

George points to various other evidence that he argues supports charging SI Group with constructive knowledge. For example, George argues the testimony of SI Group employee Reginald Hall that he "expected that a trailer would tip over within four to ten minutes" if uncoupled while staged on gravel shows that SI Group "knew that the area was not safe." Dkt. 220 at 15 (quotation omitted). But Hall's testimony merely demonstrates that Hall knew it was unsafe to uncouple a trailer while staged on gravel. Hall's testimony is not evidence that SI Group should have known of a dangerous condition *prior* to the accident.

Next, George points to "[t]estimony from Muñoz that trailers staged on the gravel road were often disconnected from the tractor." Dkt. 198 at 16. If anything, this evidence demonstrates that SI Group should not have suspected a dangerous condition. Nor does the fact that "SI Group was aware that there was a fire control

9

unit that sat right next to the staged trailer"; that "SI Group controlled the gravel road"; and that "SI Group was aware that prior to the incident rain had softened the area" demonstrate that SI Group should have suspected a dangerous condition. Dkt. 138 at 23. Because "there is no evidence that the condition had existed long enough . . . for [SI Group] to have constructive notice," SI Group is entitled to judgment in its favor on George's premises defect theory. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex. 2006).

D. **GEORGE'S NEGLIGENT ACTIVITY THEORY FAILS BECAUSE THERE IS NO EVIDENCE THAT SI GROUP CONTROLLED THE ACTIVITY THAT CAUSED GEORGE'S INJURIES**

George also contends that SI Group is liable because it "controlled the unstable staging area." Dkt. 220 at 16. "The general rule is that an owner . . . does not have a duty to see that an independent contractor performs work in a safe manner." *Redinger*, 689 S.W.2d at 418. The exception to this rule is that "an independent contractor or its employee can recover against a property owner for premises liability or negligence if the owner exercised some control over the relevant work and either knew or reasonably should have known of the risk or danger." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 561 (Tex. 2016). "General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty." *Perez v. Embree Const. Grp., Inc.*, 228 S.W.3d 875, 881 (Tex. App.—Austin 2007, pet. denied). In other words, SI Group is liable to George only if George can produce evidence that SI Group exercised control over the activity that caused his injury. The antecedent question then is: What activity caused George's injuries?

George contends that "the evidence shows that this incident happened because Veolia was told to stage hot-water tanker trailers on unstable ground" and that "SI Group controlled this specific aspect of Veolia's work." Dkt. 220 at 16. I will assume for the sake of argument that both these things are true. Even so, SI Group retorts that it was Veolia's unilateral decision to unhook the trailer from its tractor that caused George's injuries, not the location of the staging area or the

condition of the ground. It is undisputed that the trailer would not have turned over if it had remained hooked to the tractor that had pulled it to the staging area. *See* Dkt. 216-10 at 54 (Plaintiff's accident reconstruction expert testifying: "I don't think [the accident] would have happened had [the tanker-trailer] remained connected."); Dkt. 216-12 at 25 (Plaintiff's safety expert agreeing that it is "fair" to say that "George is not at risk of being injured while the tractor and trailer are staged, where they were staged, as long as they stay connected."); Dkt. 216-13 at 73 (Plaintiff's design expert testifying that "with a truck coupled to the trailer, that hazard didn't exist."). Accordingly, the but-for and proximate cause of George's injuries was the uncoupling of the tractor from the tanker-trailer and the dropping of the trailer on the gravel staging area without support.

It is undisputed that SI Group had no control over the decision to uncouple the tanker-trailer from the tractor on the gravel staging area (as opposed to the concrete pad where the tanker-trailers were usually uncoupled and refilled). *See* Dkt. 216-4 at 39 (Muñoz testifying that he never discussed "disconnecting the trailer from the tractor in the staging area" with SI Group); Dkt. 216-5 at 14 ("[W]e always left the truck hooked up. It was always connected."). Rather, Mario Lopez—a Veolia employee who was not physically present at the site—directed the Veolia crew "to disconnect [the tanker] from the trailer and pull it out to the road so the mechanic can come take a look at it." Dkt. 216-4 at 16. Muñoz testified that he and "two other Veolia employees . . . ma[d]e a decision to remove the tractor" and that he did not talk to anyone from SI Group before doing so. *Id.* at 17. Accordingly, the evidence conclusively establishes that SI Group did not exercise control over the activity that caused George's injuries.

George retorts that because "Veolia did not have a choice on where to stage" and because SI Group knew that Veolia would need to uncouple trailers at the facility, SI Group should be held responsible. Dkt. 220 at 18. But Veolia's lack of choice on where to stage does not mean that Veolia lacked any choice as to where to *uncouple* the trailer or *when* to uncouple the trailer. The undisputed evidence

11

shows that Veolia crewmembers decided where and when to uncouple the trailer, and that they did so without consulting or even informing SI Group. *See* Dkt. 216-4 at 18 (Muñoz testifying that disconnecting the trailer "didn't have to be done right then and there" and could have been done in "a different area"). Accordingly, SI Group cannot be responsible for Veolia crewmembers' decision to uncouple the trailer in the gravel staging area.

## CONCLUSION

For the reasons discussed above, I recommend that SI Group's motion for reconsideration (Dkt. 195) and motion for summary judgment (Dkt. 216) be granted. Judgment should be entered in favor of SI Group.

Relatedly, I recommend that SI Group's Motion to Exclude Benjamin Gibson's Expert Opinions (Dkt. 223) be granted as to Gibson's opinions regarding SI Group's knowledge. In all other respects, I recommend the motion to exclude Gibson's opinions be denied as moot.

Finally, I recommend that SI Group's Motion for Summary Judgment on Gross Negligence (Dkt. 233), SI Group's Motion to Exclude John McGrath's Expert Opinions (Dkt. 230), and SI Group's Motion to Exclude Workplace Safety Opinions Offered by Plaintiff's Experts Roelof deVries and Eric Van Iderstine (Dkt. 232) be denied as moot.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 3rd day of March 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE